UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RENALDA R.,

                                        Plaintiff,

v.                                                              3:20-cv-00915 (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                              OF COUNSEL:

LACHMAN, GORTON LAW FIRM         PETER A. GORTON, ESQ.
  *Counsel for Plaintiff*
P.O. Box 89
1500 East Main Street
Endicott, NY 13761

SOCIAL SECURITY ADMINISTRATION    AMELIA STEWART, ESQ.
OFFICE OF THE GENERAL COUNSEL
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION AND ORDER

        Renalda R. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial

review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her application for Supplemental Security Income ("SSI").  (Dkt. No.

1.)  This case has proceeded in accordance with General Order 18 of this Court which sets forth

the procedures to be followed when appealing a denial of Social Security benefits.  Pursuant to

28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a Magistrate

Judge.  (Dkt. No. 7.)  Presently before the Court are the parties' cross-motions for judgment on the pleadings.  (Dkt. Nos. 13, 17.)  For the reasons set forth below, the determination of the Commissioner is affirmed.

## I.    BACKGROUND

Plaintiff was born in 1972, has a tenth-grade education, and previously worked as babysitter.  (Administrative Transcript[1] at 32, 237, 414.)  On August 29, 2016, Plaintiff filed for SSI alleging disability beginning February 25, 2015, due to diabetes, problems with her neck and back including herniated discs and a pinched nerve in her shoulder, hypertension, bipolar disorder, depression, schizophrenia, bilateral carpal tunnel syndrome, inactive thyroid, and various breathing and sleep disorders including insomnia, obstructive sleep apnea, and asthma. *Id*. at 13, 125, 237, 241.  The application was denied and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  *Id*. at 29-49, 125, 133.  ALJ Elizabeth W. Koennecke held a hearing on December 18, 2018, and a supplemental hearing on May 22, 2019, for the testimony of a vocational expert.  *Id*. at 29-49, 51-57.

On June 5, 2019, the ALJ issued a written decision finding Plaintiff not disabled from February 25, 2015, through the date of the decision.[2]  *Id*. at 7-26.  Relevant to this action, the ALJ found Plaintiff had the following severe impairments: obesity, degenerative disc disease,

---

[1]  The Administrative Transcript is found at Dkt. No. 10.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns. All other citations to documents are to the pagination generated by the Court's electronic filing system, CM/ECF.

[2]  To determine whether a claimant is disabled, the Commissioner uses a five-step evaluation that places the ultimate burden of persuasion on the claimant to prove disability and produce supporting evidence.  *See* 20 C.F.R. §§ 404.1512(a), 404.1520(a)(4); *Cichocki v. Astrue*, 729 F.3d 172, 175 (2d Cir. 2013) (citing *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)).

and mental impairments, variously characterized. *Id*. at 13-14. The ALJ found Plaintiff has the

residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. §

416.967(b):

> Specifically, the claimant can lift, carry, push and/or pull 20
> pounds occasionally and ten pounds frequently, stand and/or walk
> for a total of six hours, and sit for a total of six hours in an eight-
> hour work day. She can occasionally climb ramps, stairs, ladders,
> ropes or scaffolds; kneel; crouch; and crawl. The claimant can also
> frequently balance and stoop. She has no other exertional
> limitations. Mentally, the claimant retains the ability to understand
> and follow simple instructions and directions; perform simple tasks
> independently; maintain attention and concentration for simple
> tasks; and regularly attend to a routine and maintain a schedule.
> She can relate to and interact appropriately with all others to the
> extent necessary to carry out simple tasks. She can also handle
> simple, repetitive work-related stress, in that she can make
> occasional decisions directly related to the performance of simple
> tasks involving goal-orientated work, rather than work involving a
> production rate pace.

*Id*. at 16-17.

The ALJ found Plaintiff was unable to perform her past relevant work but determined she

was not disabled because there were a significant number of jobs in the national economy she

could perform. *Id*. at 20. Specifically, the ALJ relied upon the VE testimony to conclude

someone of Plaintiff's age, education, work experience, and RFC could perform the

requirements of representative occupations such as mail clerk, cashier II, and photocopying-

machine operator. *Id*. at 20-21. Therefore, she was not disabled within the meaning of the

Social Security Act. *Id*. at 21. On June 16, 2020, the Appeals Council denied Plaintiff's request

for review, making the ALJ's decision the final decision of the Commissioner. *Id*. at 1-5.

In support of reversal, Plaintiff challenges the ALJ's RFC determination. (Dkt. No. 13.)

Specifically, Plaintiff claims  (1) the ALJ improperly relies on the outdated medical opinions of

the non-examining state agency consultants; (2) the ALJ's RFC is contrary to the remaining valid

opinion evidence and is not supported by any medical opinion; (3) the ALJ fails to properly

assess the functional limitations; and (4) the mental RFC is not supported by substantial

evidence.  In response, the Commissioner contends the ALJ's decision applies the correct legal

standards and is supported by substantial evidence.  (Dkt. No. 17.)

## II.   RELEVANT MEDICAL EVIDENCE

### A.   Consultative Medical Examiner Tiziana P. Jasper, M.D.

Dr. Jasper performed a consultative physical evaluation of Plaintiff on October 11, 2016.

(T. at 404.)  Plaintiff was 44 years old and reported a past history of non-insulin-dependent

diabetes mellitus, hypertension, asthma, hypothyroidism, sleep apnea, bipolar disorder, and back

pain.  *Id*.  She described paranoid delusion and irritable agitated mood.  *Id*.  She complained of

chronic severe low back pain and reported taking Percocet 3-4 times per day.  *Id*.  She was not

under orthopedic or pain management care.  *Id*.  She also complained of low back tenderness

radiating to the left leg with numbness and pain at 10/10.  *Id*.  She claimed restricted "ADLs"

due to her pain.  *Id*.  Her past surgical history included a cholecystectomy in 2012, a lap-band

procedure in 2012, and bariatric surgery in 2016.  *Id*.

Dr. Jasper observed Plaintiff was overweight and in no acute distress.  *Id*. at 405.  Her

gait was ambulatory, not assisted, and not antalgic.  *Id*.  She was able to walk at a reasonable

pace without assistance.  *Id*.  She was able to sit and rise from the chair and the examination

table without assistance.  *Id*.  Her neurological exam was within normal limits.  *Id*.  She showed

decreased lumbar flexion and extension, and lateral flexion.  *Id*.  Her straight leg raising was

positive on the left side at 45 degrees.  *Id*.  She refused to walk on tippy toes, heels, and squat

down due to severe pain.  *Id*.  It was noted she was guarded with constricted affect.  *Id*.  She was

4

difficult to engage in conversation and there was no emotional lability during the examination. *Id*. Her memory was intact. *Id*. Plaintiff's ability to maintain concentration and attention was fair. *Id*.

Dr. Jasper assessed diabetes, hypertension, asthma, seasonal allergies, sleep apnea, hypothyroidism, bipolar disorder, and lumbar disc disease "as per the claimant history." *Id*. at 406-07. Dr. Jasper did not, however, render an opinion about Plaintiff's physical limitations in functional terms.

### B.      Consultative Psychological Examiner Paul Fulford, Ph.D.

On October 17, 2016, Dr. Fulford performed a consultative mental status examination of Plaintiff. *Id*. at 413. She reported having five children ranging in age from 4 through 29. *Id*. Her grooming and hygiene were good, and her posture and gait were normal. *Id*. She reported seeing a psychiatrist monthly. *Id*. at 414. She complained of low energy, stated it was difficult getting out of bed sometimes, and reported difficulty sleeping. *Id*. at 415.

Dr. Fulford found Plaintiff's attitude was difficult but overall cooperative. *Id*. at 414. Her concentration was poor. *Id*. Her calculation abilities were fair. *Id*. Plaintiff's short-term auditory recall memory was below average. *Id*. She was orientated to month and year but not the date. *Id.* She denied hallucinatory experiences but made comments suggestive of underlying paranoid thinking such as "everyone is out to get me and everything is a conspiracy." *Id*. at 415. She appeared to be in the borderline range of intellectual functioning. *Id*. Her judgment appeared poor while her motivation and level of effort appeared good. *Id*.

Dr. Fulford's diagnostic impression was depressive disorder and rule out borderline to low average intellectual functioning. *Id*. He stated it was not appropriate for Plaintiff to be her

own payee due to cognitive impairment with special education.[3]  *Id*.  Dr. Fulford did not, however, opine on Plaintiff's mental limitations in functional terms.

### C.      State Agency Physician Ibrahim Housri, M.D.

On October 27, 2016, Dr. Housri reviewed the available record and determined Plaintiff's impairments limited her to lifting and carrying up to twenty pounds occasionally and ten pounds frequently; standing or walking for up to six hours per workday; and sitting for up to six hours per workday.  *Id*. at 119-20.  He opined Plaintiff could climb occasionally, balance frequently, stoop frequently, kneel occasionally, crouch occasionally, and crawl occasionally.  *Id*. at 120. He found no evidence of any manipulative or environmental limitations.  *Id*.

### D.      State Agency Psychologist Brian McIntyre, Ph.D.

On October 18, 2016, Dr. McIntyre reviewed the available record and determined Plaintiff had no more than moderate work related mental limitations.  *Id*. at 118, 121. Specifically, Dr. McIntyre determined Plaintiff had moderate limitations for understanding, remembering and carrying out detailed instruction, but could engage in basic simple tasks.  *Id*. at 121-23.  He assessed moderate limitations for maintaining attention and concentration for extended periods, but found Plaintiff remained capable of sustaining concentration for simple tasks.  *Id*.  In all other areas, Dr. McIntyre opined Plaintiff was not significantly limited, including in the ability to understand, remember, and carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, make simple work-

---

[3]  During the examination, Plaintiff reported attending special education classes.  (T. at 414.) Record evidence also indicates she was not in special education classes.  *Id*. at 242.

related decisions, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.*

Additionally, Dr. McIntyre stated Plaintiff's "mental health functioning impair[s] her to some degree . . . [h]owever, she is capable of performing certain ADL's." *Id*. at 122. He further noted she "is currently consistent in terms of symptoms she is reporting. She appears capable of certain SRT's." *Id.*

### E.    Family Nurse Practitioner Julie Bambara

On November 12, 2018, FNP Bambara submitted a functional capacity assessment on account of Plaintiff's anxiety, hypertension, thyroid, polyneuropathy, degenerative disc disease, knee pain, back pain, chronic pain, diabetes, and insomnia. *Id*. at 498. She noted Plaintiff takes Percocet, Abilify, Ambien, Zanax, Cymbalta, Clonidine, and Lyrica, and such medications cause lightheadedness, dizziness, drowsiness, tiredness, and difficulty concentrating. *Id.*

She indicated Plaintiff's conditions would cause pain, fatigue, diminished concentration, diminished work pace, and the need to rest at work. *Id.* FNP Bambara stated Plaintiff would have good days and bad days, would be off-task more than 33% of the day, and would be absent more than four days per month. *Id*. at 498-99. She indicated Plaintiff could sit for two hours per day, stand/walk for two hours per day, and should alternate sitting and standing every 20-30 minutes. *Id*. at 499. She opined Plaintiff could frequently lift up to five pounds, occasionally lift up to ten pounds, and should never lift over ten pounds. *Id.* Her opinion was that Plaintiff had been this limited since November 2007 through November 2018. *Id.*

F.      **Licensed Clinical Social Worker Kyle Webb**

On November 13, 2018, LCSW Webb submitted a mental functional capacity assessment on account of Plaintiff's bipolar II disorder, insomnia disorder, and mood lability often associated with poor or inconsistent responses to life challenges or stressors. *Id*. at 1103. He noted Plaintiff takes Abilify, Ambien, and Cymbalta. *Id*.

LCSW Webb assessed a marked impairment (defined to mean serious limitation, substantial loss in the ability to effectively function, loss greater than 33%) in the ability to maintain attention and concentration. *Id*. He indicated a medium impairment (defined to mean more than slight but less than a serious limitation) in the ability to maintain regular attendance without interruptions from psychological based symptoms, perform activities within a schedule, interact appropriately with the general public, and to respond appropriately to ordinary stressor in a work setting with simple tasks. *Id*. at 1103-04. He noted more than a slight limitation (meaning able to function satisfactorily) in the ability to accept instructions and respond appropriately to criticism from supervisors and get along with co-workers. *Id*. at 1103. He indicated Plaintiff would be off-task more than 33% of the day and absent three or more days per month. *Id*. at 1104. He opined Plaintiff was this limited from February 2017, through November 2018. *Id*.

III.    **DISCUSSION**

A.      **Standard of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d. 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985

(2d. Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

**B.      The ALJ's RFC Determination**

As noted above, Plaintiff challenges the ALJ's RFC finding.  (Dkt. No. 13.)  For the reasons outlined below, the ALJ's RFC determination was proper and based on substantial evidence in the record.

A claimant's RFC is defined as "'what an individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'"  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'"  *Hendrickson v. Astrue*, No. 5:11-CV-927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *6).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

In arriving at a claimant's RFC, the ALJ is tasked with the responsibility of reviewing all the evidence, resolving inconsistencies, and making a determination that is consistent with the

evidence as a whole.  *See Camarata v. Colvin*, No. 6:14-CV-0578 (MAD), 2015 WL 4598811, at

*9 (N.D.N.Y. July 29, 2015) (quoting *Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008)

(summary order)).  However, "[a]n ALJ does not have to strictly adhere to the entirety of one

medical source's opinion."  *Warren v. Comm'r of Soc. Sec.*, No. 3:15-CV-1185 (GTS/WBC),

2016 WL 7223338, at *7 (N.D.N.Y. Nov. 18, 2016) (subsequent history omitted).  As a result,

the RFC formulated by the ALJ need not "perfectly correspond with any of the opinions of

medical sources cited in his decision, [because an ALJ is] entitled to weigh all of the evidence

available to make an RFC finding that was consistent with the record as a whole."  *Matta v.

Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).  Moreover, "[a]n ALJ need not

recite every piece of evidence that contributed to the decision, so long as the record 'permits [the

reviewing court] to glean the rationale of an ALJ's decision.'"  *Cichocki*, 729 F.3d at 178 n.3

(quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

　　　In this case, the ALJ surveyed the record and determined Plaintiff retains the RFC—

despite her physical and mental impairments—to perform light work, subject to the following

additional restrictions:

> [She] can lift, carry, push and/or pull 20 pounds occasionally and
> ten pounds frequently, stand and/or walk for a total of six hours,
> and sit for a total of six hours in an eight-hour work day.  She can
> occasionally climb ramps, stairs, ladders, ropes or scaffolds; kneel;
> crouch; and crawl.  [She] can also frequently balance and stoop.
> She has no other exertional limitations.  Mentally, [she] retains the
> ability to understand and follow simple instructions and directions;
> perform simple tasks independently; maintain attention and
> concentration for simple tasks; and regularly attend to a routine
> and maintain a schedule.  She can relate to and interact
> appropriately with all others to the extent necessary to carry out
> simple tasks.  She can also handle simple, repetitive work-related
> stress, in that she can make occasional decisions directly related to
> the performance of simple tasks involving goal-orientated work,

rather than work involving a production rate pace.

(T. at 16-17.)

In reaching her RFC determination, the ALJ afforded the assessments of Drs. Housri and McIntyre significant weight because they each are supported by detailed explanations, in which both doctors referenced specific medical findings in support of their conclusion. *Id.* at 18. Furthermore, stage agency medical and psychological consultants, like Drs. Housri and McIntyre, are highly qualified professionals who are also experts in Social Security Disability evaluation. *Id.*

In her decision, the ALJ acknowledged that two of Plaintiff's "providers" reported "greater physical and mental limitations." *Id.* Specifically, the ALJ noted that FNP Bambara's assessment indicated Plaintiff could not sustain even sedentary work. *Id.* The ALJ pointed to LCSW Webb's assessment, which indicated Plaintiff had marked limitations for maintaining attention and concentration. *Id.* Additionally, the ALJ noted both FNP Bambara and LCSW Webb indicated Plaintiff would be "off task" more than 33 percent of a normal workday and absent from work at least three or more days per month. *Id.*

The ALJ explained she assigned FNP Bambara's and LCSW Webb's assessments less weight because the record did not support these levels of limitations. *Id.* In so finding, the ALJ discussed the consultative examinations conducted by Drs. Jasper and Fulford. *Id.* at 18-19. The ALJ discussed Plaintiff's treatment records and discussed Plaintiff's anterior cervical discectomy and fusion in March 2018. *Id.* at 19. Additionally, the ALJ discussed Plaintiff's function report, indicating she needed no help or special reminders to take medications or to tend to her personal needs and grooming, and reported activities of daily living, including that she prepares her own meals, handles money, shops in stores and by mail, attends church and doctor appointments, uses

11

public transportation, does some sweeping and cleaning, goes to the hair salon, gets her son ready for school, occasionally socializes, watches television, and reads books, which are consistent with an ability to perform light, simple, and unskilled tasks.  *Id.*

As noted, Plaintiff takes issue with the ALJ's assignment of significant weight to the opinions of the state agency consultants and less weight to the opinions of her providers.  (Dkt. No. 13 at 14-23.)  Plaintiff also claims the non-examining consultants issued their assessments in 2016 before Plaintiff developed some of her most severe impairments and resulting limitations in 2018 and, therefore, are outdated.  For reasons discussed herein, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.  (Dkt. No. 17 at 4-12.)

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of Social Security disability.  *See Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, No. 5:14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks and citations omitted); *see also Reed v. Comm'r of Soc. Sec.*, No. 5:16-CV-1134, 2018 WL 1183382, at *5 (N.D.N.Y. Mar. 6, 2018) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

12

Reliance on these opinions is particularly appropriate where, as in this case, there is no conflicting opinion from a treating physician.

Here, although FNP Bambara and LCSW Webb are treating sources, neither one is an acceptable medical source. *See* 20 CFR § 404.1513(a), (d); SSR 06-03p, 2006 WL 2329939, at *2-3). "[A]n ALJ is 'free to consider' statements of other sources, such as nurse practitioners, in making her overall assessment; however, 'those opinions do not demand the same deference as those of a treating physician.'" *Barnaby v. Comm'r of Soc. Sec.*, No. 8:17-CV-0399 (GTS/WBC), 2018 WL 4522057, at *7 (N.D.N.Y. June 6, 2018) (quoting *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order)); *see Meyers v. Comm'r of Soc. Sec.*, No. 1:18-CV-1476, 2020 WL 923413 (W.D.N.Y. Feb. 26, 2020) ("As an initial matter, by virtue of her status as a social worker, [plaintiff's treating licensed social worker's] opinions are not entitled to any special weight"). In determining what weight to give this other medical evidence, an ALJ has more discretion than when considering a medical opinion from a treating physician. *See* SSR 06-03p; *see also Jodi B. v. Comm'r of Soc. Sec.*, No. 19-CV-00834, 2021 WL 3682736, at *1 (W.D.N.Y. Aug. 19, 2021). The ALJ's decision should, however, reflect consideration of the information from an other source so that a subsequent reviewer may follow the ALJ's reasoning. *See* SSR 06-03p.

In affording FNP Bambara's and LCSW Webb's opinions less weight, the ALJ noted they were Plaintiff's "providers" and outlined a number of reasons for discounting their opinions. (T. at 18-20.) Specifically, the ALJ discussed the results of the October 2016 consultative examination with Dr. Jasper, during which Plaintiff displayed a normal gait, full muscle strength throughout (despite a reduced range of motion in her lumbar spine), normal range of motion in her shoulders, elbows, wrists, hips, ankles, and cervical spine, and no trouble sitting and rising

from a chair and the examination table.  *Id*. at 18, 405.  Additionally, images of Plaintiff's lumbar and cervical spine revealed "mild" degenerative changes.  *Id*. at 18, 411.  She also noted Dr. Fulford's observation during the October 2016 psychological examination that Plaintiff displayed a normal gait and normal posture.  *Id*. at 18, 414.

Cognitively, Dr. Jasper observed Plaintiff's affect was constricted and she was "difficult to engage in conversation."  *Id*. at 18, 405.  However, she had no emotional lability.  *Id*. at 405.  Her memory was intact and her ability to maintain concentration and attention was fair.  *Id*.  As discussed above, Dr. Fulford found her calculation abilities "fair" and her abstract thinking "good."  *Id*. at 18-19, 414-15.

The ALJ also determined Plaintiff's treatment records do not support the level of physical and mental limitations reported by FNP Bambara and LCSW Webb.  *Id*. at 23.  For example, Plaintiff's diabetes had been well-controlled and electrodiagnostic studies from October 2017 revealed only "mild" right-sided carpal tunnel syndrome, with no cervical radiculopathy.  *Id*. at 19, 422.  A neurological examination with Dr. Taseer Minhas, of Neuro Medical Care Associates, PPLC, also in October 2017, showed largely benign findings, including full strength, symmetrical reflexes, and no ataxia with a tandem gait.  *Id*. at 19, 418.  In October 2017, NP Denise Karsten, of Upstate Brain and Spine Center, examined Plaintiff and observed she was in no acute distress, had good range of motion as to all extremities, and her gait was only "mildly cautious" when leaving the office "despite being "labored and cautious" during testing.  *Id*. at 19, 1111.

The ALJ also discussed Plaintiff's anterior cervical discectomy and fusion in March 2018 due to "bilateral arm pain, numbness and weakness since 10/2017."  *Id*. at 19, 1121.  However, the December 2018 reports from Plaintiff's neurosurgeon described her as "doing well" with

"good strength" in all four extremities and no difficulty with ambulation. *Id*. at 19, 1217. Other records indicated she "no longer had arm symptoms," and Plaintiff had "regained her upper extremity strength," but complained of burning pain in her feet and problems with bladder emptying. *Id*. at 1214.

In May 2018, FNP Bambara observed Plaintiff's right foot and neuropathy were better. *Id*. at 601. In June 2018, it was noted "Patient is doing really well with great improvement in her myelopathy symptoms. Strength, numbness, and gait improved." *Id*. at 11141. Plaintiff reported Lyrica was helping her foot pain to some extent. *Id*. at 1138. In December 2018, she "reported no problems with her hands." *Id*.

As a result, the ALJ was well within her discretion to rely on opinions from the state agency consultants and assign less weight to the opinions of the other sources. *See Jeffrey C. v. Berryhill*, No. 6:18-CV-505 (FJS/DJS), 2019 WL 3361256, at *5 (N.D.N.Y. May 22, 2019) (noting that it is within the ALJ's discretion to determine what weight to assign the opinion of a nurse practitioner) (subsequent history omitted). This is particularly true here, where no other acceptable medical source offered an opinion about Plaintiff's physical and mental functioning. *See Annabi v. Berryhill*, No. 16-CV-9057 (BCM), 2018 WL 1609271, *17 (S.D.N.Y. Mar. 30, 2018) (quoting *Hooper v. Colvin*, 199 F. Supp. 3d 796, 815-16 (S.D.N.Y. 2016) (quoting 20 C.F.R. § 404.1519)). Accordingly, the Court finds substantial evidence supports the weighing of the evidence and remand is not warranted on this ground. *See Barber v. Comm'r of Soc. Sec.*, No. 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *7 (N.D.N.Y. July 22, 2016) (citations omitted) ("It is well established that an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion[s] may constitute substantial evidence.").

Plaintiff also claims that Dr. Housri's opinion should have been given very little weight (if any) because it was rendered before Plaintiff's most serious symptoms developed.  (Dkt. No. 13 at 14-17.)  To be sure, a medical opinion may be outdated or "stale" if it does not account for a plaintiff's deteriorating condition.  *See Maxwell H. v. Comm'r of Soc. Sec.*, 1:19-CV-0148 (LEK/CFH); 2020 WL 1187610, at *5 (N.D.N.Y. Mar. 12, 2020); *Carney v. Berryhill*, No. 16-CV-269, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017).  "However, a medical opinion is not necessarily stale simply based on its age."  *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018).  Overall, remand is warranted where more recent evidence in the record "directly contradict[s] the older reports of [claimant's] functioning on which the ALJ relied" and the ALJ failed to analyze the more recent evidence.  *See Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642 (2d Cir. 2020); *see also Liberatore v. Colvin*, No. 7:15-CV-1483 (GTS), 2016 WL 7053443, *7 (N.D.N.Y. Dec. 5, 2016) (stating that "timeliness of evidence is merely 'a factor that courts have cited in finding a lack of substantial evidence in the record,' and does not necessarily compel rejection of a particular piece of evidence or the ALJ's finding relying thereon") (quoting *Abar v. Colvin*, 15-CV-0095 (GTS), 2016 WL 1298135, at *6 (N.D.N.Y. Mar. 31, 2016) (other citations omitted)).

Here, contrary to Plaintiff's assertion and as discussed above, the ALJ explained how the medical evidence submitted after Dr. Housri's opinion did not change the picture about Plaintiff's functionality.  (T. at 18-19.)  Notably, Plaintiff neither demonstrated additional associated functional limitations that undermine Dr. Housri's opinion, nor identified any relevant evidence post-dating Dr. Housri's opinion that the ALJ failed to consider.  *See, e.g.*, *Abate v. Comm'r of Soc. Sec.*, No. 1:18-CV-0266, 2020 WL 4597315, at *6 (W.D.N.Y. 2020) (finding subsequent surgery and spinal impairment did not render opinion stale); *Johnson v. Comm'r of*

16

*Soc. Sec.*, No. 1:19-CV-0706, 2020 WL 5104550, at *8 (W.D.N.Y. 2020) ("Here, although the consultative report at issue was written prior to [p]laintiff's surgery and [motor vehicle accident], it was not stale because, contrary to what [p]laintiff maintains, there is substantial evidence (normal clinical findings) to support the ALJ's determination that [p]laintiff's condition did not worsen following the consultative exam.  Moreover, the problems that [p]laintiff complained about at the consultative examination were the same problems that she complained about following the [motor vehicle accident], namely, neck and back pain.).

To the extent Plaintiff cites to evidence indicating that she complained of radiating back pain after Dr. Housri's review, thus rendering his opinion outdated, as the Commissioner points out, the ALJ supportably discounted Plaintiff's subjective complains, finding that the record contained "inconsistencies between [Plaintiff's] reporting and functioning such that little weight should be placed on her testimony or any opinions that adopt her allegations."  (T. at 19; Dkt. No. 13 at 14, Dkt. No. 17 at 6-7.)  The ALJ's subjective symptom analysis is "entitled to great deference and therefore can only be reversed only if it [it is] patently unreasonable."  *Donna W. v. Comm'r of Soc. Sec.*, No. 6:19-cv-81 (FJS), 2019 WL 6716715, at *4 (N.D.N.Y. Dec. 10, 2019).  In this case, Plaintiff fails to challenge this finding.

In short, Dr. Housri's opinion was not rendered stale by Plaintiff's subsequent treatment and surgeries.  In light of this finding, Plaintiff's argument that her physical RFC is not supported by any medical opinion also fails.  (*See* Dkt. No. 13 at 17-18.)  Consequently, remand is not warranted on this basis.

The Court is similarly unpersuaded by Plaintiff's contentions that the ALJ failed to properly assess Plaintiff's mental limitations.  (Dkt. No. 13 at 25-27; Dkt. No. 17 at 15-17.)  While Plaintiff argues mental health records contradict the RFC and support the opinions of

LCSW Webb and FNP Bambara (*e.g.*, T. at 596, 637, 485-86), Defendant also cites several pieces of evidence in the record to support the ALJ's assessment, (*id*. at 485-86, 601, 637, 485). However, the question is not whether there was evidence that supported the opinions of Plaintiff's providers, but rather whether the ALJ's assessment of their opinions was supported by substantial evidence. *See Sophie H. v. Saul*, No. 5:18-CV-375 (CFH), 2019 WL 3975455, at *10 (N.D.N.Y. Aug. 22, 2019) ("To the extent that plaintiff raises potential conflicting evidence within [the] treatment notes, it was within the ALJ's discretion to weigh this evidence against other evidence in the record and resolve the conflict accordingly."); *see also Tamara B. v. Comm'r of Soc. Sec.*, No. 3:18-CV-0422 (TWD), 2019 WL 2410798, at *8 (N.D.N.Y. June 7, 2019) ("There is a breadth of treatment and opinion evidence involved in this case and it was within the ALJ's purview to review all of the evidence which was before him, resolve any inconsistencies therein, and make a determination consistent with the evidence as a whole.").

Furthermore, the mental health records Plaintiff identifies, some of which were submitted after Dr. McIntyre's review, do not change the picture of Plaintiff's mental functioning, such that the ALJ could no longer rely on the State agency consultant's opinion formulating the RFC. *See Camille*, 652 F. App'x at 28 n.4. For example, Plaintiff points to notes from a January 2017 evaluation at Family & Children's Society, where a provider observed poor concentration, insight, and judgment, along with angry/combative behavior. (Dkt. No. 13 at 26, citing T. at 475-78.) However, by February 2017, her providers at Family & Children's Society observed her to have coherent, logical thoughts, good cognitive function, good attention, fair concentration, and fair insight and judgment, and by June 2018, observed Plaintiff to be attentive and engaging, with a euthymic mood, normal speech, and good concentration, judgment, and insight. (Dkt. No. 17 at 16-17, citing T. at 483-84, 479-80.)

Taken as a whole, it is well-settled that "the [Commissioner's] finding will be sustained if supported by substantial evidence, . . . even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner]." *Rosado*, 805 F. Supp. at 153 (internal citations omitted). The ALJ's detailed analysis here is reflective of her responsibility to review all the evidence before her, resolve inconsistencies, and make a determination consistent with the evidence as a whole. *See Bliss v. Colvin*, No. 3:13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y., Mar. 21, 2014) (same).

While there may be some evidence in the record to support Plaintiff's position, where "evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)). Thus, remand is not warranted on this ground.

The Court also find Plaintiff's contention that the ALJ did not properly assess the limitations to work pace and/or attendance to be without merit. (Dkt. No. 13 at 23-24.) Work pace and attendance both "fall[ ] under the category of concentration and persistence." *Tyler M. v. Saul*, No. 3:19-CV-426 (CFH), 2020 WL 5258344, at *11-12 (N.D.N.Y. Sept. 3, 2020) (quoting *Lowry v. Comm'r of Soc. Sec.*, No. 1:15-CV-1553 (GTS/WBC), 2017 WL 1290685, at *4 (N.D.N.Y. Mar. 16, 2017)), *report and recommendation adopted*, 2017 WL 1291760 (N.D.N.Y. Apr. 6, 2017). This means the "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* (quoting *Cox v. Astrue*, 993 F. Supp. 2d 169, 182 (N.D.N.Y. 2012)). Even a

19

"moderate" limitation in the area of concentration, persistence, or pace does not necessarily preclude the ability to perform unskilled work. *Id*. (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010); *Matta*, 508 F. App'x. at 55 ("The ALJ found that plaintiff had moderate difficulties in concentration, persistence and pace . . . that limit [him] to simple, routine, low-stress, and unskilled tasks, which involve no more than minimal contact with co-workers, supervisors and the general public.") (internal quotation omitted)).

The ALJ's decision makes clear that in reaching her RFC determination she relied on Drs. Housri's and McIntyre's opinions—both of whom are competent State agency medical experts—who in turn relied on the assessments of the consultative examiners. (T. at 16-20.) Additionally, for reasons discussed above, the Court finds the ALJ properly weighed the medical opinions of record relating to Plaintiff's mental limitations. *See Frey ex rel. A.O.*, 485 F. App'x at 487.

As noted, Dr. McIntyre opined Plaintiff had "moderate" limitations for understanding, remembering and carrying out detailed instruction, but could engage in basic simple tasks. (T. at 121-23.) He opened Plaintiff had "moderate" limitations in maintaining concentration, persistence, or pace. *Id*. With regard to "attendance," Dr. McIntyre opined Plaintiff was "not significantly limited" in, *inter alia*, the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id*. at 121-23.

Here, by limiting Plaintiff to simple work requiring only the ability to understand, remember, and carry out simple instructions and decisions and not performing at a production rate, the ALJ incorporated into the RFC the moderate limitations that were supported by the record, including Dr. McIntyre's assessment. *See Rivas v. Berryhill*, No. 1:17-CV-05143 (ALC), 2018 WL 4666076, at *15 (S.D.N.Y. Sept. 27, 2018) ("The Second Circuit has repeatedly held that 'moderate' limitations [in concentration, persistence, and pace] do not preclude an individual's ability to perform unskilled work.") (collecting cases); *Tatelman v. Colvin*, 296 F. Supp. 3d 608, 613 (W.D.N.Y. 2017) ("it is well-settled that a limitation to unskilled work . . . sufficiently accounts for limitations relating to stress and production pace"); *see, e.g.*, *Eby v. Colvin*, 227 F. Supp. 3d 275, 279-80 (W.D.N.Y. 2017) ("The RFC determined by the ALJ, which limits plaintiff to performing low-stress, goal-oriented work (and not production pace work) involving only simple tasks, adequately accounts for plaintiff's moderate limitations in attention and concentration."); *Landers v. Colvin*, No. 14-CV-1090, 2016 WL 1211283, at *4 (W.D.N.Y. Mar. 29, 2016) ("The determination that Plaintiff is limited to 'simple, repetitive, and routine tasks' accounts for Plaintiff's [moderate] limitations as to maintaining attention and concentration, performing activities within a schedule, and maintaining regular attendance."); *Morales v. Berryhill*, 484 F. Supp. 3d 130, 149 (moderate limitations in ability to understand, remember, and carry out detailed instructions does not preclude unskilled work); *see also Call v. Comm'r of Soc. Sec.*, No. 1:16-CV-1003 (WBC), 2017 WL 2126809, at *4 (N.D.N.Y. May 16, 2017) (moderate limitations do not preclude unskilled work).

Thus, contrary to Plaintiff's argument that the ALJ did not properly assess the limitation to work pace and/or attendance, the ALJ merely declined to include limitations, as opined by FNP Bambara and LCSW Webb in check-box form, that Plaintiff would be off-task more than

21

33% of the day and absent from work at least three days per week, as she concluded that such limitations were not supported by the medical record.[4]  *See, e.g.*, *Tamara M. v. Saul*, No. 3-19-CV-1138 (CFH), 2021 WL 1198359, at *9 (N.D.N.Y. Mar. 30, 2021) (rejecting similar argument about time off-task and absenteeism where ALJ contrasted treating provider's conclusions of "marked" limitations in these areas with "mild to moderate" findings by other providers); *see also Andrea N. v. Saul*, No. 3:18-CV-1186 (CFH), 2020 WL 1140512, at *6 (N.D.N.Y. Mar. 9, 2020) ("Accordingly, because the record evidence establishes that plaintiff has, at most, a moderate limitation in maintaining a regular work schedule and work-pace and the RFC specifically limits plaintiff to light work that involves only simple, routine tasks with minimal contact with coworkers, supervisors, or the public, the RFC adequately 'accounts for [the plaintiff's] limitations for performing activities within a schedule and maintaining regular attendance.'"); *Melisa G. v. Berryhill*, No. 3:18-CV-508 (DJS), 2019 WL 2502726, at *5 (N.D.N.Y. June 17, 2019) (upholding ALJ's determination that opinion regarding the plaintiff's need for off-task time was speculative where it was unsupported by the medical record).

---

[4]  The ALJ also explained that "[t]he record does not reflect frequently missed appointments and no testing is of record by these individuals to support such significantly limited ability to concentrate." (T. 19, 498-99, 1103-04.)  As the Commissioner points out, the ALJ did not find that Plaintiff's ability to regularly attend her medical appointments equated to an ability to perform full-time work—rather it was one factor that the ALJ found inconsistent with FNP Bambara's and LCSW Webb's extremely limiting opinions. (Dkt. No. 17 at 13.)  This was appropriate and does not warrant remand.  *See Saenz v. Berryhill*, No. 16 Civ. 574, 2017 WL 1944158, at *8 (S.D.N.Y. May 10, 2007) (holding the ALJ reasonably gave less weight to doctor's opinion about maintaining a schedule, given "evidence of Plaintiff regularly attending program appointments' among other things).  Similarly, it was appropriate for the ALJ to consider that neither FNP Bambara nor LCSW Webb conducted any testing that would have shed light on Plaintiff's ability to concentrate. (Dkt. No. 17 at 14.)  Although Plaintiff complains that the "lack of testing" should have also precluded the ALJ's reliance on the State agency reviewing consultants, the record demonstrates that the consultants reviewed the testing performed by both consultive examiners before forming their opinions.

A "plaintiff may disagree with the ALJ's conclusion; however, the Court must 'defer to the Commissioner's resolution of conflicting evidence' and reject the ALJ's findings 'only if a reasonable factfinder would have to conclude otherwise.'" *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations omitted)).  The Court's review of the record supports these conclusions by the ALJ regarding Plaintiff's mental limitations and indicates that Plaintiff has not established further limitations regarding off-task time, work pace, or attendance than those included by the ALJ in the RFC.  Thus, remand is not warranted on this basis.

Lastly, as to Plaintiff's one-sentence argument that the ALJ failed to consider her alleged need to change positions, the Court agrees with the Commissioner that this argument is undeveloped.  (Dkt. No. 13 at 25, Dkt. No. 17 at 14-15.)  Nevertheless, assuming Plaintiff is referring to FNP Bambara's opinion that Plaintiff should change positions every 20-30 minutes, (T. at 499), "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits [the reviewing court] to glean the rationale of an ALJ's decision.'" *Cichocki*, 729 F.3d 172 at 178 n.3 (quoting Mongeur v. Heckler, 722 F.2d at 1040 (2d Cir. 1983).  As discussed above, the ALJ reasonably declined to rely on FNP Bambara's opinion and remand is not warranted on this ground.

## IV.    CONCLUSION

In light of the foregoing, the Court finds the ALJ's decision was based upon correct legal standards and supported by substantial evidence in the record.

**ACCORDINLGY,** it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is

**GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is

**AFFIRMED**, and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED**.


Dated: September 29, 2021
   Syracuse, New York

          Thérèse Wiley Dancks
          United States Magistrate Judge